May it please the Court, Laurie Schoenberg, on behalf of the petitioner, Aaron O. Ekeke-R, in this case. I'd like to reserve three minutes for rebuttal. In this case, the Board of Immigration Appeals found that Mr. Ekeke-R failed to prove that there was a change in Nigeria regarding the treatment of HIV and AIDS patients since his 1999 rebuttal hearing. Look, why don't you just look at us and tell us what you feel? You don't need to read that. Sorry. Sufficient to exempt him from the time and numerical limitations on motions to reopen and sufficient to justify reopening of his case to pursue applications for withholding of removal and for protection under the Convention Against Torture. The Board's decision in this case ignores the record. In fact, the record contains undisputed evidence that Mr. Ekeke-R was diagnosed with HIV in 2000 and began treatment for HIV then after his 1999 removal hearing, and that country conditions documents in the record at his removal hearing did not mention anything about discrimination or persecution of AIDS or HIV sufferers in Nigeria. The Board also did not dispute Mr. Ekeke-R's testimony at his last removal hearing that Nigerian authorities would detain him upon his deportation because of his criminal history. The immigration judge specifically found that information credible, so the Board had to find that that testimony was true. The Board also did not dispute that the State Department's report at the time of his motion to reopen reported, quote-unquote, widespread discrimination against persons with HIV, AIDS, which the public considered a disease resulting from immoral behavior and which included the State Department report also indicated that Nigerian authorities intentionally deprived detainees of medical care as a form of punishment or torture. The Board in this case also did not have the benefit of this Court's decision in Chandra v. Holder, which held that a combination of changes in personal circumstances and changes in country conditions could justify reopening under Section 240C- But you know, if you talk real fast, it's just... My apologies, Your Honor. That's one of the problems with your generation. Everything is fast, you know. You text, you do this, you do that. And, you know, what if Abraham Lincoln had delivered the Gettysburg Address that way? Well... To be fair, Abraham Lincoln did not have a timer next to him, so maybe he would have behaved differently. You've got lots of time. Well, in any event, Your Honor, the Board's unreasoned decision that there were no changes in country conditions supporting reopening at odds with the record and its failure to provide all the evidence relevant to the possibility that Mr. Akiki Ara would be persecuted in Nigeria due to his HIV status... Let me ask you this, Counsel. In the Board's decision, it dropped a footnote. Fairly unusual, or at least in my experience, for it to drop a footnote saying, look, we're very sympathetic to, you know, your client's situation, and if he wishes to pursue a humanitarian stay of removal, then go to DHS and seek that stay. I know this is outside the record, but did you pursue that option of relief? Yes, we did, Your Honor. Well, first of all, Mr. Akiki Ara is, in fact, on an order of supervision. I did confer with government counsel regarding an alternative disposition in this case. In particular, I was seeking reopening to pursue the withholding or CAD claim based on changes in country conditions or an exercise of prosecutorial discretion. Well, I understand that you want that, but there are other options, and I just want to know if those options are being fully explored. Your Honor, we have explored those options, and regrettably, the government does not want to exercise any sort of prosecutorial discretion or afford him any other relief other than what he's already received, which is basically release under an order of supervision. So are you saying that they've denied his petition for humanitarian relief, or did he not pursue it? Well, Your Honor, I conferred with government counsel about that. In addition, I approached the... Counsel, did he or did he not file a petition for humanitarian relief? It's a yes or no question. There was no specific petition for humanitarian relief. So the answer is no, and the first time I raised it was with government counsel when this case was set for argument? Is that what happened? Well, Your Honor, I also approached the ICE, Office of the Chief Counsel, in Los Angeles to see if they would... When? Actually, it was after the notice was issued in this case. So why... I mean, you've had the board's suggestion for years. Why did you not pursue it more rapidly? Well, Your Honor, my impression was that the Office of the Chief Counsel would not grant any other relief due to his criminal history, and that is in fact what was confirmed after the notice was issued in this case. So you didn't pursue the suggestion because you thought it would be futile? Yes, Your Honor. So as I indicated before, Your Honor, unfortunately we're in a situation where federal immigration officials do not want to afford any other humanitarian relief, but even if they deny that request, this court still should vacate the board's decision because of its unreasoned determination that there were no changes in country conditions for HIV and AIDS sufferers justifying reopening. The problem that we have, though, is there's nothing in the record to show a change between 1999 and today, and it's hard for me to say that that's an unreasonable determination when the record is what the record is. Well, there is some evidence in the record to support such a change. What change? That's what I'm trying to determine here. Well, at the 1999 removal hearing, there was a Department of State report entered into the record, and that Department of State report did not indicate any evidence of any persecution or discrimination of HIV and AIDS sufferers. At the time of his 2011 motion to reopen, in contrast, the State Department noted quote-unquote widespread discrimination of HIV and AIDS sufferers, and also indications that prison officials withhold medical care as a form of punishment. That constitutes a change sufficient to justify an exemption from the time of numerical limitations and motions to reopen and to justify reopening in this case. And, you know, of course, for a motion to reopen, we only have to show a reasonable likelihood that the requirements for the form of relief sought would be satisfied, not a conclusory showing. Your Honor, the Chandra case is actually helpful on this matter. In that case, Chandra had originally claimed for asylum based on his status as an Indonesian of Chinese ethnicity. That was denied. The motion to reopen stated that he had converted to Christianity and showed evidence of quote-unquote increased persecution of Indonesian Christians. And the Ninth Circuit in that case found that the combination of a change in personal circumstances as well as changes in country conditions for Indonesian Christians justified reopening under Section 240C7C2 of the Immigration and Nationality Act and the regulations. Now, Chandra, of course, doesn't specify what degree of quote-unquote increased persecution would justify reopening here, but as I indicated before, we only have to show a reasonable likelihood that the requirements for withholding NCAT would be specified. This Court can also look, of course, to similar cases in the context of exemptions to the one-year bar for changed country conditions. Counsel, I'm going back to the humanitarian ground for relief for a moment because we're familiar with Chandra and the case law in this area. I'm not saying that you don't have a good argument on the merits, but I think it's tough for your client's case, frankly. So I want to ask you, are you familiar with the process of applying for a humanitarian stay of removal with DHS? Is there a formal process that's in place? There is a process in the sense that one can file an I-246, which is an application for stay of removal or deportation. It doesn't specify, that form does not specify whether the application for a stay of removal or deportation would be on humanitarian grounds. To my knowledge, though, that is the only process available to ask for some sort of humanitarian stay. And at this point, he has been released under an order of supervision. I understand that, but to me, it's fairly significant when the BIA says there's a humanitarian stay of removal or deferred departure process here, I suggest you go there and try to obtain that relief. That's a fairly significant hint, if you will, that there's possibly another avenue here. You've got fairly sympathetic facts, somebody who's been diagnosed with HIV and AIDS, and he's receiving regular treatment. Presumably he's taking medications, right? Yes, Your Honor. And we know that there's denial of care for AIDS patients in Nigeria. And so given that he's undergoing treatment and he may not get the same treatment if he were to be removed to Nigeria, I would think those are fairly sympathetic facts to pitch a case for humanitarian relief. Certainly those are sympathetic facts, but even pitching a case for humanitarian relief, Your Honor, does not mean that federal immigration officials are going to accept that case. Sure, but if you don't try to go through the process, then you won't know if discretion would be exercised by the government. Has this case been in mediation? This case was in mediation for a short period of time, if I remember correctly. When did it go to mediation? I don't remember exactly, but it was fairly recently. I would have to look back at the record, Your Honor, to determine that. But all indications, at least from my end, seem to suggest that federal immigration officials would not consent to a humanitarian stay because of his criminal history. So even, you know, assuming argumentative that that hint was significant, the question is whether that avenue was reasonably available to him, Your Honor, and I did not think under the circumstances that it would be. I agree that it is a sympathetic case. Well, look, he's been here for how many years? Since 1971, Your Honor. How many years is that? That would be over 40 years, 43 years. And he came here as a student. He was 19 years old, right? Yes, Your Honor. And he went to school in the Dominican Republic. He wanted to become a doctor. Is that right? That's correct, Your Honor. And did he complete that course of education? He did, Your Honor. So he got his M.D. degree? He has it, Your Honor, yes. And what's he doing now? What work does he do? Well, at this point, Your Honor, if I remember correctly, and this was a while back, I think at that point was when he actually got into trouble with the law, so I don't know that he What did you say? I think at that point when he was finishing medical school was when he actually got into trouble with the law, so my understanding is that he did not complete the full residency requirements for medicine. At this point, he's not working as a doctor, Your Honor. What work does he do? Well, Your Honor, I'm not actually clear on that. I don't think that he's working right now. When was the last time you talked to him? I spoke with him a few months ago, Your Honor. At that point, he was unemployed. Also, of course, Let me ask you this. Now, there's something in the file that he was getting some student loans in the Dominican Republic and that he was told that, you know, by the school that the way things worked there that you'd make these false statements and then you'd get a larger amount of money, and so he ended up owing, what, about $400,000? That was the amount of restitution ordered. What? That was the amount of restitution ordered as part of his conviction. Was that paid off? Not to my knowledge, Your Honor. So nothing's been paid on that? I don't know that nothing's been paid on that, but there's no information in the record as to the amount. Huh? I don't know that nothing has been paid on that, but there's nothing in the record as to the amount. Well, okay. You don't know what, if anything, has been paid on it? Not at this time, Your Honor. I don't know. But the conviction was in 1994, so it may have been that there were payments, but I can't tell you the exact amount. Well, that's over 20 years ago. And then he served time in federal prison in New Jersey, and it was there that he sought the contracted AIDS through a needle, a tattoo needle that was... Yes, Your Honor. He was diagnosed... He was in prison, yeah. He was diagnosed with HIV in 2000, but he believes that he may have contracted it earlier through an infected needle. Say that again? Through an infected needle, as you stated, Your Honor. Infected needle. From the prison tattoo. Yes. From the prison tattoo. Yes. I thought that's what I said. Has he served in our military? He has not, Your Honor. He's been treated for HIV at USC. LAUSC Medical Center, Your Honor, and also through the County of Orange Mental Health Agency. Those documents were in the report. In support of his motion to reopen. And what's the situation with people who have HIV who were... How were they treated in Nigeria? Well, the board... Any country reports on that? There was a country report entered into the record as of the date of his motion to reopen. That was a 2010 country report, which said that HIV and AIDS sufferers sustain widespread discrimination because the public believes that their disease results from immoral behavior. This Department of State's report indicated that the forms of mistreatment that HIV and AIDS sufferers sustained included employment discrimination as well as a denial of medical care. In addition, of course, there was the earlier statement on page 15 of the same report that prison authorities withhold medical treatment as a form of punishment. And Mr. Akikiar had testified during his removal hearing that he feared imprisonment as a criminal detainee. The immigration judge did find that to be a credible statement, so this Court has to accept it as true. And, of course, since it's in a motion to reopen, all the assertions have to be accepted as true unless they're inherently unbelievable. But, yes, Your Honor, there was a statement concerning widespread discrimination against HIV and AIDS sufferers that, combined with the likelihood that Mr. Akikiar would be detained upon his arrival in Nigeria as a criminal deportee, shows a reasonable likelihood of harm to him on account of his HIV or AIDS status that would either be inflicted by the government or by private entities that the government is unable or unwilling to control for purposes of withholding. Your Honor, I would note that I'm about three minutes over my time. Do you want me to stop at this point? Why don't we hear from the government? Yes, Your Honor. Thank you. May it please the Court. My name is Andrew O'Malley. I represent the Attorney General of the United States. This Court should dismiss the petition for review because the INA limits the Court's jurisdiction to colorable constitutional claims and questions of law based on Mr. Akikiar's finding of removability on account of his criminal grounds. And Mr. Akikiar raises no such claims over which this Court should assume jurisdiction. Alternatively, the Court should deny the petition for review because the Board acted within its discretion. He's someone who's been here for almost 45 years, right? And he did, he was convicted of criminal activity involving a fairly large sum of money on student loans, right? That's correct, Your Honor. And is there any evidence that he was pressured by the medical school to file false claims? You know, two points, Your Honor. First is that it wasn't simply the bank fraud or student loan fraud. I believe there was also a conviction for lying on a passport application. That's where we get the two crimes involving moral turpitude as well as the aggravated felony conviction. I'm not sure if there was evidence. What was the lie on his passport application? You know, I'm not entirely sure what he lied about on his passport application, and I think it was a passport application fraud that was the second conviction. But these are all issues that are not before the Court. He was found removable as an aggravated felon and an individual who was convicted of two crimes involving moral turpitude. He didn't challenge that. That's the basis of his removability. Well, I know that. You know, but he's been here for 45 years, and he's got AIDS or HIV, and I think we can conclude that he has a pretty good chance that if he goes back there, he's not going to get the treatment that he's getting here at USC. AIDS is pretty rampant in some of those countries, and all that he wants is to go before the Board, have a reopening, and try once more to convince the Board that he's in danger if he goes back to Nigeria of not getting the treatment that he needs, that the society there has very harsh feelings towards people with HIV. They certainly have a different culture on how they take care of people with HIV than we have here. It's true that he's been here with us for a long time. Well, Your Honor, I'm certainly not going to stand here and try and pretend like this is not a sympathetic case, because it absolutely is. Well, you know. However, I don't think there's any evidence. We're a big-hearted country. Did we feel good by taking him and throwing him out? Your Honor, I'm not sure of the evidence in the record, and he had a full opportunity to present evidence of what treatment he will receive in Nigeria and whether or not country conditions change in Nigeria such that he would be excused from the time-limited motions to reopen. But, you know, the whole system that we have through the IJs and the BIA and the Notorios, all the rest of the stuff that goes on. I mean, as far as the Justice Department is concerned, it's all right for a disbarred lawyer to practice before the Immigration Court. Is that right? Well, I understand your concerns about Notarios, but there's no claim of ineffective assistance of counsel here whatsoever. I know that, but that's always in my mind. And we've been involved in thousands of these cases. Yes, Your Honor. And now, under these new rulings that we've had and the executive orders, people who are here illegally have a better chance of getting some relief. When was the last time? The last time we spoke with? When he was considered. A few things here. The mediation that occurred, I believe, was in 2011 when the petition for review was first filed. And I honestly don't recall what that was. Was it 2011? Yeah, at least so. Well, we're living in a different world today. That's true, Your Honor. And we spoke, opposing counsel and I spoke, after the order was issued or the notice was issued in this case concerning whether or not any of the, whether it implicated the executive action. And, of course, this is all outside the scope of this court's review because this is prosecutorial discretion. It's committed to the executive's discretion. And it went through our process. And opposing counsel asked me if I would be opposed to her going directly to ICE. I believe that's how it was. And I said no. And she did. And as I understand it, and I might be wrong here, the request to ICE was to go ahead and reopen the same request that was before, to reopen for withholding and protection under their CAT. I don't know that there was a request for deferral of removal after the final order of removal or if there was a subsequent request for prosecutorial discretion. That's something that would have to be answered by opposing counsel. But this went through our process of screening. Petitioner is an aggravated felon. Well, yeah, that's when ICE looked at a whole batch of them, maybe thousands of them at the same time. So they didn't give each individual case individual attention. Well, again, that process is outside the scope of this court's jurisdiction, and it was considered against the priorities. I know all these things. Is the problem the nature of the conviction, the fraud and the false law? Well, I'm certain that certainly doesn't help. I'm sure the passport fraud doesn't help. Well, no, I guess my question more specifically is, I understand the new policies that were announced at the end of last year in the two memos from Secretary Johnson of DHS. He falls into sort of the highest priority for enforcement action. That's correct, Your Honor. So it's not likely that the agency is going to be inclined to do much for him because of the nature of his conviction. Not likely. I certainly wouldn't discourage Petitioner from going to ICE and asking for deferral of removal. I don't think that's going to hurt to ask. It sounds to me, given his conviction and status in priority one, that if you were to go through the checklist, that he wouldn't qualify for the exercise of prosecutorial discretion under the language of the memos or directives that were issued. But it doesn't sound like the consideration of humanitarian need was fully fleshed out. Well, I don't think that's quite true, Your Honor. I think we treat each case individually. I don't know that everything in this case is in the record. What we have before us is just a glimpse of a case. And, again, that is fully outside the scope of this court's authority. That is a matter for the executive's discretion. Can you educate me on the process for seeking a humanitarian stay, removal, or deferred departure based on humanitarian grounds? Is there a formal application process that you go through for that? Your Honor, I don't deal with that. I really don't know what the process is. I know that petitioners' counsel can go straight to ICE and ask them, and to ICE counsel who is handling the case and ask them for deferred action or some sort of humanitarian relief that way as well. But I don't have the knowledge of how that works because I never see it, as to whether or not there's an actual application that they can file. Getting back to the question. What's the policy with reference to people who have AIDS, HIV, AIDS? Your Honor, each case is handled on an individual case-by-case basis. I don't know of any policy that's specifically targeted towards individuals with HIV and AIDS. Now, again- But you're saying that the evaluation of whether relief should be granted would be with ICE counsel. Well, initially, in this case, it went through our office in conjunction with ICE. But if this petition for review is denied and there's no other relief available, then, yes, it would have to go through ICE counsel. Now, accepting, as we do, that the court's decision in Ramadan, that 1252A2D restores the court's jurisdiction over mixed questions of facts and law, applies to the changed country conditions analysis. If that's the case, then this case should still be dismissed because there's a dispute here as to what the facts demonstrate. This is not the application of law. It's undisputed fact. Specifically, petitioner contends that the utter absence of evidence of the treatment of HIV, AIDS patients in Nigeria in the Department of State reports from 1997 and 1996, which are the reports in the record below, tells us something about how individuals were treated in 1999, which is the relevant time period, which it doesn't. There's an absolute absence of evidence as to how individuals were treated in 1999. The DOS reports in 2011 tell us that there's some discrimination, there's some denial of health care, but that doesn't show a change from 1999 to 2011. Now, Chandra, which petitioner relies on in supplemental briefing, absolutely says that a change in personal circumstances can make the change in country conditions material, but there still has to be a change between the time of the merits hearing and the time of the motion to reopen, and here that simply is not there. I'd like to note that petitioner... We've had instances where the matter goes... Radiation, and turned down by ice, and then it goes back again. Turned down by ice. Then it goes back again. And it's not turned down by ice. Yes, Your Honor, and this court's role here is to review the agency's decision. Whether or not to exercise prosecutor's discretion, again, is wholly committed to the executive's discretion. That goes back to Heckler v. Cheney. Yeah, but we know... I don't know why you keep telling us that. I didn't become a judge to give carte blanche to executive determination. Well, when it comes to the prosecutor's discretion, Your Honor, the case law is pretty specific. My job is to administer justice. That's what we're here for. Well, Your Honor, as I said, we... And you're with the Department of Justice. Of Justice, correct, Your Honor. Yeah, and we have a wonderful judge in this building that... Well, forget about that. He's got plenty of other problems. But my concern is that he's been here for all these years. Of course, he did some bad things. I don't know what the circumstances were. I know that this whole system of student loans that we have in this country is a disaster. And there's a lot of corruption in it. And I think the total amount of student loans now is about $1.7 or $1.8 trillion. They'll never be able to pay it back. Huh? We could keep fighting wars for the next 20 years, still probably have money left over. Not that I'm criticizing the Defense Department. I'm glad they're there. I wish they'd do more. But, you know, anyway, sometimes a little mercy, kindness goes a long way. See, I'm out of time. If I could take just two seconds to sum up. As I said before, I'm not going to stand here and pretend like this is not a sympathetic case. I think we all agree. I think the Board agrees that this is a wholly sympathetic case. Petitioner had an opportunity to file a motion to reopen and chose to present really no evidence that would accept him from the numerical or the time limitations on motions to reopen. The Board denied based on failure to show changed country conditions and failure to demonstrate a prima facie case for relief, which we didn't get a chance to get into. But Petitioner has waived that decision. What's happening in Nigeria now? You know, I don't know, Your Honor. There's nothing in the record that tells me that. There's nothing in the record that tells me that. If Petitioner has something that shows that there's been a change in country conditions now that would make him eligible for relief, he can certainly go to the Board of Immigration Appeals and file a motion to reopen. But that's not relevant to the inquiry here as to whether or not the Board, well, first of all, the Court has no jurisdiction, but whether or not the Board abused its discretion in denying this motion to reopen. All right. Thank you very much. Thank you. What are you going to tell me now? Okay. You're over your time. We'll give you 30 seconds. Okay. You talk fast so you can probably get plenty in. Your Honor, just with respect to the jurisdictional argument in this case, Section 242A2C does not limit the jurisdiction of this Court for two reasons. First of all, because this case presents We don't care about that. Are you going to file another petition to reopen? As far as the motion to reopen is concerned, Your Honor, there is sufficient evidence on the record at least to justify development of the issues concerning the treatment of HIV and AIDS sufferers in this present record to justify reopening under the present proceedings and to justify granting this petition for review. In particular, evidence of his HIV and AIDS diagnosis. So your answer is yes. Well, yes. Yes, we would want this Court to grant this petition for review and to send the case back for further development of the record concerning the likelihood that he would suffer harm in his home country because of his status as an HIV and AIDS sufferer. And with respect to the current country conditions, of course, as Government Counsel noted, that's not part of the record. I'm more than happy to send out supplemental information about that for which this Court can take judicial notice. But I do believe that the record contains sufficient information at least of his HIV diagnosis and of at least a difference in the way the country conditions have been supported sufficient to justify a grant of this petition for review and further development of the record regarding his eligibility for relief. Thank you, Your Honor. Thank you. All right, the next matter.
judges: Pregerson, Tallman, Nguyen